UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NEVIN P. COOPER-KEEL, JD,

    Plaintiff,    Hon. Robert J. Jonker

v.    Case No. 1:21-cv-203

ALLEGAN COUNTY, et al.,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Nevin Cooper-Keel, proceeding pro se, has sued Defendants Allegan County, Robert Kengis, Margaret Baker, Jennifer Kamps, and Aimee Kamphuis pursuant to 42 U.S.C. § 1983 alleging claims arising out of his child custody proceeding pending in the 48th Circuit Court in Allegan County, over which Defendant Kengis, a judge of that court, is presiding. Plaintiff's federal claims allege: (1) intentional denial of due process (Count 1); (2) violation of Plaintiff's First Amendment rights (Count 4); violation of Plaintiff's right to a fair hearing (Count 5); and cruel and usual punishment (Count 6). Plaintiff also alleges state-law claims for negligence and intentional infliction of emotional distress (IIED) (Counts 2 and 3). As relief, Plaintiff seeks compensatory damages in the amount of $1 million. (ECF No. 1 at PageID.26.)

Presently before the Court is Defendants' Motion to Dismiss. (ECF No. 42.) Plaintiff has failed to respond to the motion within the time permitted by Western District of Michigan Local Civil Rule 7.2(c). Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the Court **GRANT** the

motion, dismissing the federal claims with prejudice and dismissing the state-law claims without prejudice.[1]

## I. Background[2]

Plaintiff owns and operates a bail bonds agency in Allegan, Michigan, which provides bail bonds in criminal cases pending in the 48th Circuit Court. (ECF No. 1 at PageID.7.) Defendant Kengis is a judge of the 48th Circuit Court; Defendant Baker is the chief judge of the 48th Circuit Court; Defendant Kamps is the Friend of the Court (FOC) for the 48th Circuit Court; and Defendant Kamphuis is an interviewer/recommender for the FOC.

On June 22, 2010, Plaintiff filed a complaint for divorce from his wife, Barbara Cooper-Keel, with whom he had two children. Plaintiff's complaint requested 50/50 custody and made no other requests. (*Id.* at PageID.3.) The same day, Defendant Kengis entered an order referring the case to the FOC for custody review. Neither Plaintiff nor his attorney received notice of the order. On July 10, 2020, Barbara filed her counterclaim in the proceeding, in which she alleged that Plaintiff was an "absentee" father and was bi-polar. (*Id.* at PageID.4.) Beginning the week of July 19, 2020, Barbara refused to allow Plaintiff to see their sons and to continue with their existing visitation arrangement. Around that time, Barbara filed an *ex-parte* application for a Personal Protection Order (PPO) against Plaintiff after he called the police and asked them to ascertain his sons' whereabouts. Defendant Kengis granted the application on July 24, 2020, even though Barbara had recently made numerous death threats toward Plaintiff and the children. Plaintiff objected to the PPO and submitted four complete records of threatening text messages from

---

[1] Although Defendants have requested oral argument, the Court determines that oral argument is unnecessary as Defendants' brief adequately develops the issues.

[2] The factual recitation herein is based on the facts alleged in Plaintiff's complaint, which are taken as true. Plaintiff's legal conclusions and opinions have been disregarded.

Barbara. The hearing on the objections was not held within the fourteen-day period specified in Mich. Comp. Laws § 600.2950(14). (*Id.* at PageID.6–7.)

On or about August 13, 2020, Defendant Kengis summoned Plaintiff on his own motion to show cause why he should not be held in contempt for failure to pay $25,000 in bond forfeiture for two fugitives who had already been returned to jail within the time set forth in Mich. Comp. Laws § 765.28. Defendant Kengis held a hearing and ruled on the bond forfeiture within a week after he entered an order awarding Barbara full legal and physical custody of the children and denied Plaintiff's motion to reconsider his objection to the PPO. Defendant Kengis ruled against Plaintiff on the bond forfeiture, and Plaintiff was required to appeal the decision to the Michigan Court of Appeals. Plaintiff alleges that Defendant Kengis intended his ruling on the bond forfeiture in the criminal case (which Plaintiff had to spend time appealing) to adversely impact Plaintiff's right and ability to appeal Defendant Kengis's custody and PPO rulings in the custody case. (*Id.* at PageID.7-8.) Plaintiff also claims that Defendant Kengis denied him a fair hearing during the one-day custody trial, as Plaintiff was not permitted to present Barbara's mental health records, which were sealed. Plaintiff alleges that the denial of a fair hearing was a pretext for Defendant Kengis to exact revenge upon Plaintiff for statements he had made years earlier about Defendant Kengis. Plaintiff asserts that Defendant Kengis was biased against him. (*Id.* at PageID.9.)

On August 24, 2020, Defendant Kamphuis interviewed Plaintiff's sons pursuant to Defendant Kengis's June 22, 2020 order. Plaintiff and his attorney were not provided notice of the interview. When Plaintiff inquired of the FOC office why they were interviewing his sons and why he was not given notice, an FOC employee and Defendant Kengis's law clerk told him that FOC had a "policy" not to provide notice to a parent who was subject to a PPO. (*Id.* at PageID.11.)

Plaintiff alleges that, in her recommended custody order, Defendant Kamphuis included a false statement regarding Plaintiff's conduct when he appeared at the courthouse on the date the children were interviewed. Plaintiff made a Freedom of Information Act (FOIA) request for videos that would have shown Defendant Kamphuis's statement was false. After the County denied the request on the basis of security concerns, Plaintiff attempted to subpoena the video by personally serving a subpoena on Defendant Kamphuis, but another employee came to the window because Defendant Kamphuis was afraid to accept personal service from Plaintiff. (*Id.* at PageID.14–15.) The next day, Defendant Kengis issued a "threat order" against Plaintiff requiring that a deputy follow Plaintiff whenever he entered the courthouse. (*Id.* at PgeID.15–16.)

Between December 9, 2020, and January 4, 2021, Plaintiff filed three visitation order complaints concerning Barbara's interference with Plaintiff's visitation time. On or about February 10, 2021, Barbara filed an emergency *ex parte* application to extend the PPO, which was to expire in seven days. Barbara cited the parenting time complaints that Plaintiff had filed as recently as January 4, 2021, as the basis for her emergency request. Defendant Kengis granted the *ex parte* request, even though there was no allegation that Plaintiff had violated the PPO. (*Id.* at PageID.17–18.)

## II. Motion Standard

A Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief may be granted tests the legal sufficiency of a complaint by evaluating its assertions in a light most favorable to Plaintiff to determine whether it states a valid claim for relief.[3] *See In re NM Holdings*

---

[3] Defendants did not move to dismiss for lack of jurisdiction pursuant to Rule 12(b)(1). Several of the grounds they raise for dismissal, including the *Rooker-Feldman* doctrine, absolute judicial immunity, and Eleventh Amendment immunity, are considered jurisdictional in nature. *See VanderKodde v. Mary Jane Elliott, P.C.*, 951 F.3d 397 (6th Cir. 2020) (noting that the district court dismissed the case on the ground of *Rooker-Feldman* pursuant to a motion brought under Rule

4

*Co., LLC*, 622 F.3d 613, 618 (6th Cir. 2010). Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). As the Supreme Court has held, to survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* As the Court further observed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[4] *Id.* at 678-79.

---

12(b)(1)); *Edwards v. Commonwealth of Ky. Revenue Cabinet*, 22 F. App'x 392, 393 (6th Cir. 2001) ("Eleventh Amendment immunity constitutes a jurisdictional bar, and neither supplemental jurisdiction nor any other basis for jurisdiction overrides Eleventh Amendment immunity.") (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)); *Leech v. DeWeese*, 689 F.3d 538, 540 (6th Cir. 2012) (characterizing absolute judicial immunity as a jurisdictional defense). Regardless, because Defendants' motion presents only a facial challenge based on these jurisdictional defenses, the Court will consider the motion as properly brought under Rule 12(b)(1).

[4] Although a court generally must construe a pro se litigant's pleadings liberally, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam) (stating that pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers"), I decline to apply the rule in this case as Plaintiff admits that he is a lawyer. *See Baker v. Chagrin Valley Med. Corp.*, No. C82-122, 1985 WL 445, at *1 n.1 (N.D. Ohio Mar. 22, 1985) (declining to construe the plaintiff-law-school-graduate's pleadings liberally and instead "giv[ing] them the same careful scrutiny accorded to pleadings filed by other law school graduates").

5

### III.  Discussion

A.  **Federal Claims**

1.  *Rooker-Feldman* **Doctrine**

Defendants argue that the *Rooker-Feldman* doctrine bars Plaintiff's claims. The doctrine, rooted in the Supreme Court's decisions in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), provides that lower federal courts are without authority to review final judgments of state courts. This is because "only the Supreme Court of the United States has the jurisdiction to review state court decisions." *Coleman v. Governor of Michigan*, 413 F. App'x 866, 870 (6th Cir. 2011) (citing *Rooker*, 263 U.S. at 416). The Supreme Court has clarified that the doctrine is limited to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). In determining whether *Rooker-Feldman* bars a claim, a court must look to the "source of the injury the plaintiff alleges in the federal complaint." *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006). If the injury stems from the state-court judgment, the doctrine applies. *Id.* On the other hand, if the injury is caused by some other source, such as a third-party's actions, the claim falls outside the narrow scope of *Rooker-Feldman*. *Lawrence v. Welch*, 531 F.3d 364, 368–69 (6th Cir. 2008) (quoting *McCormick*, 451 F.3d at 394).

Although Defendants cite the law on *Rooker-Feldman*, they provide scant analysis of how it applies to Plaintiff's claims and, instead broadly claim that Plaintiff seeks to have this Court act as a second appellate court for the proceedings in the 48th Circuit Court. Nonetheless, a review of

6

the complaint shows that much of the claims in Counts 1, 4, and 5 are barred by the doctrine.[5] For example, in Count 1, which alleges denial of due process, Plaintiff complains about the PPO orders against him as violative of his protected speech and his right to notice and a hearing. (ECF No. 1 at PageID.20.) Plaintiff makes similar allegations in Count 4 (violation of First Amendment rights) regarding the regarding the custody order and the PPO and in Count 5 (violation of right to a fair hearing) regarding the PPO. (*Id.* at PageID.23–24.) These allegations indicate that Plaintiff alleges injury on the basis of entry of these orders. Courts have held that allegations of injury arising out of the entry of a PPO constitute injury over which a federal district court may not exercise jurisdiction. *See Mackey v. Berryman*, No. 17-CV-12359, 2019 WL 197000, at *6 (E.D. Mich. Jan. 15, 2019) (*Rooker-Feldman* barred review of claim that the judge violated his rights by entering a PPO improperly, without notice and an opportunity to be heard, and in retaliation for political activities and expression); *Nicklay v. Eaton Cnty. Circuit Court*, No. 1:08-CV-211, 2008 WL 2139613, at *2 (W.D. Mich. May 20, 2008) ("In arguing that the PPO impedes his right of access to the courts and his right to register complaints with law enforcement authorities, Plaintiff is alleging the PPO as the source of his federal injury. Because the PPO is a state court order, *Rooker-Feldman* would prevent this Court from exercising jurisdiction to hear Plaintiff's claim and alleged injury."). Similarly, the Sixth Circuit has held that review of a plaintiff's due process challenge to a state-court order—failure to receive a hearing or a fair hearing—is barred by *Rooker-Feldman*. *In re Cook*, 551 F.3d 542, 547–48 (6th Cir. 2009); *see also Wallis v. Fifth Third Bank*, 443 F. App'x 202, 204–05 (7th Cir. 2011) ("Wallis cannot circumvent the *Rooker-Feldman*

---

[5] Plaintiff's cruel and unusual punishment claim in Count 6 fails to state a claim. Although Plaintiff does not specifically reference the Eighth Amendment, it is the only amendment that prohibits cruel and unusual punishment. The Eighth Amendment applies only to convicted inmates. *Walker v. Miller*, No. 18-3209, 2018 WL 7575709, at *1 (6th Cir. Oct. 17, 2018). Plaintiff does not allege that he is a convicted inmate.

7

doctrine by recasting a request for the district court to review state-court rulings as a complaint about civil rights, due process, conspiracy, or RICO violations."). While some portions of Counts 1, 4, and 5 are arguably not barred by the *Rooker-Feldman* doctrine (allegation in Count 1 that FOC employees told Plaintiff that their policy was not to inform a parent against whom a PPO was entered about interview of children; allegation in Count 4 that Defendant Kengis drummed up a sham bail bonds forfeiture to interfere with Plaintiff's appeal of PPO and custody rulings; and allegation in Count 5 that Plaintiff and his attorney failed to receive notice of the February 25, 2021 show cause summons relating to Plaintiff's parenting time complaints), the majority of Plaintiff's allegations are so barred and subject to dismissal for lack of jurisdiction.[6]

## 2.     Eleventh Amendment Immunity

Plaintiff has sued Defendants in their individual and official capacities. Defendants contend that the official capacity claims are barred by the Eleventh Amendment. They are correct.

The Eleventh Amendment generally bars federal actions against a state unless the state has waived its sovereign immunity or consented to suit in federal court. *Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008). The State of Michigan has not consented to be sued for civil rights violations in federal court. *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545 (6th Cir. 2004). A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). An official capacity suit is thus no different than a suit against the state itself. *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) ("A suit against an individual in his official capacity is

---

[6] The Court finds it unnecessary to address Defendants' *Younger* abstention argument. The Sixth Circuit has held that when *Younger* applies, a district court should stay, rather than dismiss, claims for damages. *See Lloyd v. Doherty*, No. 18-3552, 2018 WL 6584288, at *4 (6th Cir. Nov. 27, 2018) (citing *Doe v. Univ. of Ky.*, 860 F.3d 365, 372 (6th Cir. 2017)). Here, Plaintiff seeks only damages and not injunctive or declaratory relief. However, because immunity bars Plaintiff's federal claims for damages, dismissal is proper. *Id.*

the equivalent of a suit against the governmental entity."). Because the Eleventh Amendment prohibits suits for damages against states in federal court, *see Quern v. Jordan*, 440 U.S. 332, 342 (1979), damage claims against state officials in their official capacities are also barred by the Eleventh Amendment. *See Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005) (noting that Eleventh Amendment immunity "applies to actions against state officials sued in their official capacity for money damages") (citing *Lapides v Bd. of Regents*, 535 U.S. 613, 616, 623 (2002)). Moreover, a state official sued in his official capacity is not a "person" subject to suit for money damages under Section 1983. *Will*, 491 U.S. at 70–71.

Because Defendants are Michigan judges and judicial employees, they are considered state officials. *See LaFountain v. Meyer*, No. 1:16-cv-658, 2016 WL 3679279, at *2 (W.D. Mich. July 12, 2016) ("The Sixth Circuit Court of Appeals has already considered the application of Eleventh Amendment immunity to Michigan state courts. The Sixth Circuit determined that Michigan's courts are arms of the state and thus entitled to Eleventh Amendment immunity.") (citing *Pucci v. 19th District Court*, 628 F.3d 752, 760–74 (6th Cir. 2010)); *Varner v. Schrock*, No. 1:14-cv-999, 2014 WL 5441807, at *3 (W.D. Mich. Oct. 24, 2014) (noting that the plaintiff's suit against the clerk in her official capacity was equivalent to a suit brought against the circuit court and that "[t]he circuit courts of the State of Michigan are arms of the state and, thus immune from suit"). Because FOC officials are employees of the circuit court, *see* Mich. Comp. Laws § 552.505(g), Defendants Kamps and Kamphuis are entitled to Eleventh Amendment immunity. *See Williams-Richardson v. Calhoun Cnty. Friend of the Court*, No. 1:10-cv-540, 2010 WL 3516083, at *2 (W.D. Mich. Sept. 8, 2010) (dismissing Calhoun County Friend of the Court on grounds of Eleventh Amendment immunity). Accordingly, the official capacity claims against Defendants must be dismissed.

9

### 3.     Absolute Judicial Immunity

Defendants argue that Defendants Kengis and Baker are entitled to absolute immunity. Based on my review of the complaint, it appears that Plaintiff's only claims against Defendant Baker are the negligence and IIED claims, as to which absolute judicial immunity under federal law would not apply. Because I separately recommend that the Court not exercise supplemental jurisdiction over those claims, I consider judicial immunity only as to the federal claims against Defendant Kengis.

It is well established that a judge is absolutely immune from suit seeking monetary relief, so long as the judge was performing judicial functions. *See Mireles v. Waco*, 502 U.S. 9, 9–10 (1991). "[J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Id.* at 11. The "immunity applies to actions brought under 42 U.S.C. § 1983 to recover for alleged deprivation of civil rights." *Stern v. Mascio*, 262 F.3d 600, 606 (6th Cir. 2001). A judge is not immune (1) where the judge's alleged actions were not taken in the judge's judicial capacity, or (2) where the actions, although judicial in nature, were taken in the complete absence of jurisdiction. *Mireles*, 502 U.S. at 11–12. "[T]he scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge. A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978) (quoting *Bradley v. Fisher*, 80 U.S. 335, 351 (1871)). "Whether an act is judicial depends on the nature and function of the act, not the act itself." *Barnes v. Winchell*, 105 F.3d 1111, 1116 (6th Cir. 1997) (internal quotation marks omitted) (quoting *Mireles*, 502 U.S. at 13). The analysis involves two considerations: "(1) looking to the nature of the act itself, whether the act is a 'function normally performed by judge' and (2) regarding the expectations of the parties, whether the parties 'dealt with the judge in his

judicial capacity.'" *Id.* (quoting *Mireles*, 502 U.S. at 12). The Sixth Circuit has observed that the line between judicial acts covered by immunity and those that are not "is not self-revealing." *Norfleet v. Renner*, 924 F.3d 317, 319 (6th Cir. 2019). The court added:

> Two illustrations come to mind. If a judge with general criminal jurisdiction ruled that an act amounted to a crime when it did not, he would merely act in excess of jurisdiction and thus be immune from a § 1983 lawsuit challenging his decision. But if a probate judge assumed authority over a criminal case, the judge would act in the clear absence of jurisdiction because he is invested only with authority over wills and the settlement of estates of deceased persons.

*Id.* (internal quotation marks and citations omitted).

Here, it is clear that Defendant Kengis acted in a judicial capacity when he entered the custody order and the PPO and conducted hearings on those orders. Similarly, although Plaintiff was not a party to the case, Defendant Kengis was performing a judicial function in the criminal case in which he entered the bond forfeiture. Moreover, nothing in Plaintiff's complaint suggests that Defendant Kengis was acting beyond his jurisdiction. Accordingly, Plaintiff's claims for damages against Defendant Kengis are barred by absolute judicial immunity.

### 4. Quasi-Judicial Immunity

Defendants Kamps and Kamphuis argue that they are entitled to quasi-judicial immunity from Plaintiff's claims against them for damages. Courts have extended absolute judicial immunity to non-judicial officers who perform "quasi-judicial" functions. *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994). "Quasi-judicial immunity extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Id.* (citing *Scruggs v. Moellering*, 870 F.2d 376 (7th Cir. 1989)). In determining whether an individual is entitled to quasi-judicial immunity, courts employ a "functional" approach, looking "to the nature of the function performed, not the identity of the actor who performed it." *Id.* (citations and internal quotation marks omitted).

It is well established that FOC officials performing their duties pursuant to the Friend of the Court Act are entitled to quasi-judicial immunity. *Johnson v. Granholm*, 662 F.2d 449, 450 (6th Cir. 1981); *Johnson v. Wayne Cnty.*, No. 13-14331, 2013 WL 5854441, at *3 (E.D. Mich. Oct. 30, 2013) ("Friend of the Court employees are entitled to judicial or quasi-judicial immunity."); *Yee v. Michigan Supreme Court*, No. 06-CV-15142, 2007 WL 118931, at *5 (E.D. Mich. Jan. 10, 2007) ("Yee's claims against the Shiawassee County Friend of the Court, Daniel J. Loomis, the Deputy Friend of the Court, and Christine Gazella, an FOC employee, stem from the Friend of the Court's 1998 recommendation that primary physical custody of the Yee children remain with Yee's ex-wife, Christine Roche, and Yee's disagreement with that recommendation. By application of the foregoing authorities . . . these Friend of the Court Defendants are entitled to absolute immunity.").

Here, Plaintiff's claims against Defendant Kamphuis and, by extension, Defendant Kamps, are based on Defendant Kamphuis's proposed custody order furnished to Defendant Kengis—an act that Defendant Kamphuis performed in her duties as an FOC interviewer/recommender. Because the alleged acts were taken pursuant to the Friend of the Court Act, Defendants Kamphuis and Kamps are entitled to quasi-judicial immunity. Accordingly, Plaintiff's federal claims against them should be dismissed.

### 5. Allegan County

Although Plaintiff names Allegan County as a Defendant, he fails to allege any wrongdoing by the County. As noted above, the 48th Circuit Court and its employees are deemed to be an arm of the State, not the County. Regardless, even if the individuals could be considered County employees or agents, Plaintiff still fails to state a claim against the County under 42 U.S.C. § 1983 because he does not allege that the County's policy, practice, or custom caused the alleged constitutional violations. *See Nouri v. County of Oakland*, 615 F. App'x 291, 300 (6th Cir. 2015)

("We can quickly affirm dismissal . . . since Nouri's first amended complaint fails to allege any facts supporting a policy or custom of constitutional violations by Hazel Park.").

### B. State-Law Claims

If the Court adopts this Report and Recommendation, it must decide whether to exercise supplemental jurisdiction over Plaintiff's state-law negligence and IIED claims. I recommend the Court decline to exercise supplemental jurisdiction and dismiss his state-law claims without prejudice pursuant to 28 U.S.C. § 1367(c)(3). "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996). In deciding whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Applying these considerations, it is especially appropriate here to dismiss the state-law claims as the case is at its early stages and no discovery or pretrial proceedings have occurred.

### III. Conclusion

For the foregoing reasons, I recommend that the Court **grant** the Defendants' motion to dismiss (ECF No. 11), dismissing Plaintiff's federal claims **with prejudice** and dismissing his state-law claims **without prejudice** pursuant to 28 U.S.C. § 1367(c)(3).

Dated: May 24, 2021  /s/ Sally J. Berens
SALLY J. BERENS
U.S. Magistrate Judge

### NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file

objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).