FILED - KZ
June 9, 2021 4:19 PM
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
ems  Scanned by:EMS 6/10

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

NEVIN P. COOPER-KEEL, JD
    Plaintiff Pro Se

V.

ALLEGAN COUNTY, et al.,

    Defendants.

Case No. 1:21-cv-203

Hon.: Janet T. Neff, and/or
Robert J. Jonker

Mag. Judge.: Sally J. Berens,

_____/

Plaintiff Nevin P. Cooper-Keel, JD
3127 127th Avenue
Allegan, MI 49010
616.329.7077
Nevincooperkeel@gmail.com

Defendant Allegan County
113 Chestnut Street
Allegan, MI 49010
269.673.0300
bgenetski@allegancounty.org

Defendant Roberts Kengis
113 Chestnut Street
Allegan, MI 49010
269.673.0300
rkengis@allegancounty.org

Defendant Margaret Baker
113 Chestnut Street
Allegan, MI 49010
269.673.0300

Defendant Jennifer Kamps
113 Chestnut Street
Allegan, MI 49010
269.673.0300

Defendant Aimee Kamphuis
113 Chestnut Street
Allegan, MI 49010
269.673.0300

_____/

## OBJECTION TO REPORT AND RECOMMENDATION

Plaintiff states, pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Plaintiff has not been served with *any* pleadings of the Defendants – other than a rejection of his request to produce records.

2. Plaintiff would like swift justice on this matter – and an opportunity to amend his pleadings, as, inter alia, since Plaintiff's initial summons and complaint that was properly served upon Defendants, Plaintiff has discovered ex parte communications between Judge Kengis and his Defendant wife in the divorce case, dating back to December.

3. However, just like the recurring theme in the 48th Circuit Court of Allegan County, apparently whatever pleadings of Defendant's that this recommendation references have been ex parte communications between Defendant's and This Court.

4. That is not to say that This Court is responsible for that – since the onus to serve whatever pleadings have been filed with This Court by Defendants is on Defendants, not Plaintiff, nor This court.

5. FOC and Judicial personel not knowing, let alone practicing the basic, minimal standard of their job, as complained of in Plaintiff's initial filing, i.e. things like the required analysis of custodial environment and Michigan's 12 statutory best interest factors to be considered in making an order on custody, is not 'acting within their jobs'.

6. Such gross negligence does not fall within the scope of their jobs.

7. Therefore, they are not entitled to judicial immunity.

8. Judicial immunity is an antiquated concept from Monarchical rule, that to the extent it has been applied in USA, it is incompatible with American Jurisprudence in a republic.

9. Talk about a recipe for judicial abuse – there's this restrictive, utopian judicial cannon that is supposed to be followed by judges that we tell our children about

when they go to bed, but in reality, there is effectively zero enforcement of it by Michigan's Judicial Tenure Commission and on top of that, federal courts want to give "absolute immunity" even for gross negligence.

10. Judges ought to be held to a higher standard of liability than private citizens, if they want to rule over people's lives – not an immune standard – which means no standard at all.

11. Committing perjury, like by Defendant Kamphuis, and Plaintiff has uncovered what he believes in Judge Kengis's perjury in his own courtroom, since his initial complaint in this case, is also not acting within the scope of their jobs.

12. The basis for the notion of judicial immunity, is that nobody would want to do the job if immunity didn't exist.

13. Upon information and belief, in Allegan County anyway, the pay for judges is around $130k/year and the retirement package is 90% of that pay for life for a judge that served a term and a half.

14. Plenty of qualified people would be willing to do that job.

15. Obviously, given the nature of the judiciary – and the propensity for lawsuits – some modicum of immunity is appropriate.

16. However, the level of absolute immunity being applied to the extent it shields gross negligence from any consequence, is too much.

17. Plaintiff would like a chance to get to those arguments, but it would be improper in many ways, including prejudicing Plaintiff, without first being served with Defendant's pleadings.

18. Upon information and belief, Defendant's have deliberately not served Plaintiff with their pleadings to obfuscate the judicial process and it shows disregard for these judicial proceedings.

19. These Defendants have already unduly taken far more from Plaintiff than they had any business abusing their positions within government to do, and Plaintiff will not give not these people any further quarter – they should serve Plaintiff whatever their pleadings are, and then lets proceed.

20. Plaintiff wouldn't have filed this case but for an earnest wish for justice on these matters.

21. Since Defendant does not appear interested in defending from Plaintiff's complaint – indicated by Plaintiff yet to be served with any pleadings of Defendant's, he will file another properly motioned request for Default Judgment to accompany this objection.

22. If This Court wishes not to grant that or set it aside, then Plaintiff would be interested in having an opportunity to review and respond to any of Defendants's pleadings, before a recommendation like this is entered, but that would first require that Defendants actually serve those pleadings upon Plaintiff.

WHEREFORE, it would be very unfair and improper to proceed with this recommendation without proper civil procedure and due process having first been followed, and with Plaintiff's Motion for Default Judgment before this court, that should be heard by This Court and Plaintiff's Summons and Complaint should have been answered by Defendants with service upon Plaintiff before this recommendation is entertained.

Respectfully Submitted,

_____          6.8.2021
Nevin